**SMITH–BLAIR, INC., a corporation, Plaintiff,**

v.

**DRESSER INDUSTRIES, INC., a corporation, Defendant.**

**Civ. A. No. 38462.**

United States District Court
N. D. California, S. D.
Nov. 20, 1961.

A. Donham Owen, Roger W. Erickson, Robert E. Wickersham and Melville Owen, San Francisco, Cal., for plaintiff.

Edward B. Gregg, San Francisco, Cal., and Robert E. Burns, New York City, for defendant.

WOLLENBERG, District Judge.

This cause of action having come on for trial before the court after a pretrial, witnesses having been heard on behalf of both the plaintiff and the defendant during seven days of trial, documentary and physical exhibits having been introduced by both the plaintiff and said defendant and received in evidence, briefs having been filed by both parties, and the court being advised in the premises, the court hereby makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. The plaintiff, Smith-Blair, Inc., is a California corporation having a principal place of business in the City of South San Francisco, County of San Mateo, State of California.

2. The defendant, Dresser Industries, Inc., is a Delaware corporation having a principal place of business in the City of Dallas, State of Texas, and with a place of business in the County of San Mateo, City of South San Francisco, State of California; and with a duly designated agent in the State of California for service of process and on whom service was made.

3. The patent in suit, United States Letters Patent to Hoke, No. 2,897,568, was issued on August 4, 1959 to the defendant, Dresser Industries, Inc. for "CONDUIT CLAMP," and said defendant is the owner of all right, title and interest in said patent.

4. The defendant, Dresser Industries, Inc., on June 30, 1959 (Exhibit B to Complaint) notified plaintiff that its accused device would infringe the Hoke patent when the patent issued on August 4, 1959. This action for a Declaratory Judgment that the patent was invalid and not infringed was begun the day the patent issued and was refiled on August 19, 1959.

5. Jurisdiction of this court is founded upon the existence of a question arising under the laws of the United States, to wit: the Patent Laws thereof, 28 U.S.C.A. §§ 1338(a); 1400(b); and 2201.

6. The Hoke patent in suit No. 2,-897,568 relates to a CONDUIT CLAMP for supporting sealing gaskets, in one form or another, on the surface of a pipe to confine the contents of the pipe within the pipe. It was issued August 4, 1959 on an application filed August 20, 1957. Samples of defendant's clamps made like the patent in suit are in evidence as defendant's Exhibit C and plaintiff's Exhibits 9 and 10.

7. The accused device of plaintiff is a conduit clamp for a like purpose. It is in evidence as plaintiff's Exhibits 1, 2, 3, 95A, B and C, and as defendant's Exhibit E.

8. The pipe clamp art is an old art. A pipe clamp is made up of a split band (sometimes called a split sleeve) and some form of a clamp to pull the ends of the split band towards each other to tighten the band around the pipe. The earliest form of clamp used since at least 1933 is made up of a pair of plain lugs, each with a hole to receive one or more bolts to draw the lugs toward each other. One lug is connected to one end of the split band and the other lug to the other end of the band, by any one of several expedients to be described later.

9. An operating characteristic of these prior art plain lug clamps is that as the bolt is tightened the lugs tend to tilt or roll and to bend the bolt. This is because the split band is secured to and pulls on the lug inside of where the force of the bolt is acting on the lug, thus producing a movement tending to rock the lugs toward each other.

10. The Hoke patent in suit had for its object to prevent the rocking of the clamp lugs and it describes lugs having arms or fingers which project from one lug across to the other lug where a bearing surface is provided. Thus as the clamp lugs are drawn together by the bolt, the arms guide the lugs and prevent the lugs from rocking.

11. Hoke admitted on cross-examination that mechanically all he did was to add the sliding arm or finger to the plain lug of the prior art and that this was the essence of his alleged invention. Newell, defendant's expert, admitted on cross-examination that sliding fingers were old in the art of clamps and specifically, were shown to be old in a 1939 clamp to Lindsay.

12. The record is uncontradicted that every element or part combined in the Hoke patent claims in suit was old in the clamp art.

13. The 1939 Lindsay sliding finger clamp is shown in British Patent No. 512,406. Lindsay calls attention in his specification to the advantage of adding the fingers or "axial projections" to the clamp lugs, as he calls them, as lending support to the bolt and "to resist backward or outward bending thereof when the nut is being tightened up to make the joint." The patent refers to the two sliding finger lugs and the bolt as "bolt adaptors," but the witnesses on both sides were in full agreement that regardless of names used, the Lindsay clamp lugs and the Hoke clamp lugs were part for part and function for function identical one to the other. This was reviewed with great care in Exhibits 62 and 64 in the cross-examination of defendant's expert Newell and no rebuttal evidence was offered. The Patent Office Examiner fail-

ed to cite the Lindsay patent during prosecution of the Hoke patent.

14. The same clamp the Hoke patent described as supposedly novel with Hoke is found in the Lindsay 1939 patent,—the clamp lugs with the sliding fingers, the clamping projection on the lugs to transmit the clamping force to whatever is being clamped, and the bolt to apply the clamping force. The Lindsay patent does not show the clamping projection on the lugs engaging the flanged ends of a split band, but it does show them engaging the flanged ends of two pieces of pipe where they are functioning to compress a gasket between the two flanges. Defendant's expert Newell admitted that flanged pipe is used in the waterworks industry thereby placing the Lindsay disclosure directly in the waterworks art.

15. Lindsay British Patent No. 512,-406 is not a paper patent. The Henry Lindsay Ltd. company of England has widely advertised in the U. S. A. the Lindsay clamp where it is known as the F series of clamps. Actual samples of these clamps obtained from the Henry Lindsay company are in evidence. Also in evidence are several large catalogs of the Lindsay company, one exhibit being the tenth edition. Also in evidence are several four-page brochures of the Lindsay company devoted exclusively to the Lindsay sliding finger F series of clamp.

16. The accused sliding finger pipe clamp bears a close kinship to the Lindsay sliding finger clamp as it is directly descended from the Lindsay clamp, which has been in the public domain since 1939.

17. The Smith-Blair company was founded in 1941 by Telford Smith and his wife and remains a small family-owned enterprise with Telford Smith the directing head. Telford Smith's first contact with the pipe clamp business was in 1933 when he began an employment with his uncle, R. H. Baker in Los Angeles, which employment lasted until 1939, when Telford Smith came to the Bay Area to start the plaintiff company. From 1933 to date, the products with which Telford Smith has concerned himself have been various products for the waterworks industry, including the prior art pipe clamp described in Finding 8.

18. In late 1952 or early 1953, Telford Smith received at his factory in South San Francisco a Henry Lindsay Ltd. brochure which advertised for sale the F series of sliding finger clamp. This clamp immediately appealed to Telford Smith as one he could apply to draw together a split band around a pipe. This original brochure is in evidence.

19. In April, 1953, Telford Smith decided to test the clamping power of the Lindsay sliding finger clamp. A pattern (Exhibit 8) was made and castings (Exhibits 5 and 6) were made in April 1953 by the Vulcan Foundry in Oakland. Telford Smith immediately tested a set of these clamping lugs which had three sliding fingers. On one lug there were two fingers spaced apart and on the other lug there was one finger which lay in between the other two fingers. The center finger was threaded on its end to serve as the tightening bolt. What he did was to combine the center finger and bolt in one piece instead of having them separate. He took a strip of stiff stainless steel and made the split band of a size to fit the piece of test pipe. He folded the ends of the band back over the lugs and laid the ends under the sliding fingers. This bent back form of connection to the lug was well known and used in the art at that time. Telford Smith wanted to give this sliding finger lug a rigorous test so he omitted the gasket between the test pipe and the band. The pulling power of the sliding finger lugs was so great it caused the ends of the split band to slide around the lugs. Telford Smith was satisfied he had a clamp with much greater pulling power than the plain lug, and that the problem to be solved was to find a production-line method for connecting the split band to each lug. There is no dispute in the evidence about the making of this sliding finger clamp nor about its being tested successfully as described above. The Hoke claims in suit read on this three-finger clamp, Exhibit 5. In fact, Hoke himself shows a three-finger clamp in Fig. 5 of his patent

drawings, and so does Lindsay in Fig. 10 of his 1939 patent.

20. It was obvious to Telford Smith in 1953, soon after having seen the Lindsay advertisement of the sliding finger clamp, to assemble the pipe clamp of Exhibit 5 by using the Lindsay sliding finger clamp and connecting to its clamping lugs a prior art split band by the prior art bent back form of connection.

21. In September, 1953, plaintiff had completed the fabrication of a split band tapping sleeve for the Dominguez Water Corporation of Long Beach. The device was put on test in plaintiff's factory and Telford Smith noticed that the lugs tilted as the bolts were tightened to clamp the split band around the test pipe and the water leaked out when about 200 p. s. i. was applied. Recalling the tests in April, 1953 of the Lindsay sliding fingers in the Exhibit 5 device and how the sliding fingers prevented the lugs from rolling, Telford Smith directed Dunmire to add two Lindsay sliding fingers to each lug. These were added and, on the test which followed, the lugs did not tilt nor did the water leak out, even though the pressure reached 400 p. s. i. This demonstrated again that it was obvious to Telford Smith, a man skilled in this art, to add these four Lindsay sliding fingers to cure the rolling of the prior art Dominguez lugs.

22. Two of the devices were sold and shipped to Dominguez in 1953 and four were made and shipped before March 1, 1956. The men who installed them at Dominguez testified to the installation in 1953 on the Watson Main in Long Beach, and on May 11, 1961 the earth was excavated so that the presence of the sliding fingers could be verified by these same men. There is no conflict in the testimony about the proofs on this sale in 1953, nor about the structure.

23. The evidence shows that the Dominguez type split tapping sleeve could be used for and would make an excellent pipe repair clamp. It would not be used for that except in an emergency because it costs twice as much as a split sleeve with the gasketing usual in repairing a leak. A tapping sleeve comprises a split band with lugs and bolts to draw it tight around a pipe. The purpose for which it is designed is to provide a leakproof area between the ends of the split sleeve for a hole to be bored into the pipe so a branch line can be run from the main. This means that the gasketing for a tapping sleeve is made up of a ring gasket near each end of the sleeve and a longitudinal gasket to seal the gap between the ends of the split band or sleeve, adjacent to the lugs. The gasketing for repairing a leak may comprise a patch of rubber or a full circle band of rubber. The function of the split sleeve is to support whatever form of gasketing is placed between the pipe and the band.

24. The testimony is uncontradicted that the Dominguez sliding fingers function identically with the Hoke sliding fingers in preventing the lugs from rolling.

25. In the Dominguez fittings, Smith-Blair used the prior art welded form of lug to connect the split band to the lug. With this construction, the lug is made up of a portion of the split band, the gusset, the cross-bar with the bolt holes, and the sliding fingers. Hoke admitted on cross-examination that in Dresser's prior art #179 split band clamp, the cross bar and that portion of the band to which the cross-bar is welded constitute the lug. None of the Hoke claims in suit specifies how the connection is to be made between the split band and the lug. Dresser has selected claim 5 as being typical of the Hoke claims 1 to 8 in suit.

26. The Hoke patent claims in suit do not include the gasketing as an element, but like claim 5, broadly define the five elements, (1) the split sleeve, (2) the pair of lugs, (3) the bolt or bolts, (4) the bearing surfaces on each lug, and (5) the sliding finger or arm on each lug which extends over to slide on the bearing surface on the other lug to prevent the lugs from rolling. The claims in suit describe exactly the structure of the split tapping sleeve as sold to Dominguez in 1953. The close physical identity in structure of the Dominguez split

sleeve clamp and the Hoke split sleeve clamp will be seen by comparing the photograph of Dominguez (Exhibit 29) with Fig. 4 of the Hoke drawings.

27. Hoke said he first thought of the idea of sliding fingers on lugs in October, 1956 and his early sketches and early device Exhibit D showed a milled slot as a means for connecting the split band to the lug. Hoke admitted that Exhibit D was just made up for patent purposes and was not a commercial production-line construction. There is a very practical reason why neither Hoke, nor any other manufacturer of lugs with sliding fingers, uses a milled slot, namely, because the fingers project upwardly and interfere with passage back and forth in the milling machine. By February, 1957, Hoke had made a sketch of the device which is being marketed by Dresser as its #360 clamp. This #360 device is a combination of the Lindsay sliding fingers and the cavity-wedge connection Smith-Blair had on the market since 1954 as its 2F line of clamps. Hoke had this 2F device before him when he designed the commercial form of Dresser's #360 clamp. Instead of the holding wedge inserted in the cavity, as Smith-Blair had it, Hoke substituted a wire insert and a curve in the end of the band. Hoke like Smith-Blair, holds these clamping parts in the cavity by bending over little tips of metal. Hoke obtained claims 8 to 12 on this form of connection,—none of which structure is present in the accused Smith-Blair clamp.

28. Telford Smith assigned to James Morriss in February, 1955 the task of finding an improved, economical, production-line method of connecting the split band to the Lindsay sliding finger lugs (Exhibit 5) he had tested in April 1953. Smith-Blair could have used the cavity-wedge form of connection of the 2F line of clamps, but these required more labor and more parts. The 2F line was growing in volume and was well liked by Smith-Blair customers, so there was no hurry for Smith-Blair to bring out the sliding finger form of clamp. It had been in touch with its patent counsel in 1955, 1956 and 1957 about the Lindsay sliding finger clamp and had been told that in view of the Lindsay 1939 sliding finger clamp being in the public domain, no one could get a valid patent to the sliding finger clamp construction as such.

29. In May, 1957, at the American Waterworks convention in Atlantic City, Dresser introduced the Hoke #360 clamp and Telford Smith brought back from the convention the one page Dresser brochure on this clamp. He took it to his patent counsel, who showed him by a side by side comparison (Exhibit 78) that part for part and function for function, the Lindsay F–900 prior art clamp was identical with the Dresser #360 clamp. His patent counsel advised him that no valid patent could be obtained to bar Smith-Blair from making a sliding finger clamp like Lindsay and to continue the sliding finger development.

30. Plaintiff company has never been able to afford the tooling and marketing costs of but one line of new products at a time, and in April, 1953, Telford Smith was devoting a major part of his time to his duties as a city councilman. He had hired Paul Dunmire to assist in developing new products. Dunmire had witnessed the tests of the Lindsay sliding fingers in April, 1953 on Exhibit 5, as well as the tests on the Dominguez device in late 1953, but Dunmire had the design work under way on the 2F pivoting finger type of clamping lug and decided to go ahead with its development. Marketing of the 2F clamp by plaintiff began in 1954, and continues to this day in the sizes of 10 inch O.D. and larger.

31. Although Morriss began the development of the accused clamp in 1955, he did not have the band connection part of the accused device perfected until 1959, when it was introduced to the trade at the May, 1959 Waterworks convention in San Francisco. Plaintiff had proven the perfect functioning of the Lindsay sliding fingers in preventing the lugs from rolling in the 1953 tests on Exhibit 5 and in the Dominguez devices sold in 1953. The novel feature of the accused device which took so much time to de-

velop was the "casting and coining" method for connecting the split band to the lug. This is achieved by the use of "shell core molding,"—a foundry process by which a narrow open slot is cast in the face of the lug. The end of the band has a bent back flange formed in it. The end of the flange is inserted in the open slot in the lug. The lug is placed in a press and the metal is "coined" or forged to close the open slot and grip the split band. It is now the least expensive to manufacture of all the different forms of lug-band connections plaintiff uses. It is not disclosed or claimed in the Hoke patent, nor in any other issued patent of record.

32. The accused device descends (a) from the Lindsay sliding finger clamp lugs Telford Smith had found in the public domain in late 1952 or early 1953 and which he used in the 1953 three-finger clamp and in the Dominguez sliding finger devices Smith-Blair sold in 1953; (b) from the prior art split band; and (c) from the new "casting and coining" technique.

33. The evidence is clear that plaintiff's delay from 1953 to 1959 in introducing on the market a castable clamping lug (as distinguished from the welded lugs with sliding fingers it sold to Dominguez in 1953, 1954, 1955 and 1956) was in solving the problem of getting a production-line method for connecting the split band to the lug. Hoke was stopped by this same problem from October, 1956 to February, 1957, but he solved it the easy way by copying the essentials of plaintiff's 2F form of connection. Plaintiff could have used its 2F form of connection but the 2F was selling well and plaintiff wanted something better and cheaper to manufacture.

34. Structurally speaking, all that the accused device amounts to, so far as the structure called for by the five elements of the Hoke claims in suit are concerned, is the Lindsay sliding finger clamp with the prior art split band connected to it.

35. A corollary structural characterization of the accused clamp in relation to the structure of Hoke's claims in suit is that it is the plain prior art clamping lugs and bolt with the sliding fingers of Lindsay transferred from the Lindsay lugs to the plain prior art lugs where the fingers function to prevent the lugs from rolling, exactly as they functioned in Lindsay.

36. The evidence is clear that the accused device has copied from the public domain the Lindsay sliding finger clamp lugs and has connected to its lugs the split band that formerly was fastened to clamp lugs which had no sliding fingers. This is just an aggregation or congregation of prior art elements.

37. The five elements in the Hoke claims in suit do not perform any additional or different function in the combination than they perform out of it. The split sleeve tightens the gasketing around the pipe, as a split sleeve has always done. The lugs pull the split sleeve tight on the pipe, as lugs have always done. The bolts tighten the lugs, as bolts have always done. The bearing surface on one lug and the finger on the other lug which slides on it prevents the lugs from rolling or the bolt from bending, as fingers have done since 1939 in the Lindsay prior art sliding finger clamp lugs.

38. The operative result of the five elements combined in the Hoke claims in suit is just the sum of its parts, with each old part doing what it did in the prior art.

39. There is no unusual or surprising consequence of the unification of the five elements in the Hoke claims in suit. Hoke only claimed to have added the sliding fingers to the plain lug of the prior art to prevent the lugs from rolling, but the Lindsay clamp from which the Hoke device descended had the same operative characteristic, namely, its lugs did not roll.

40. The Lindsay sliding finger clamp is in the clamp art, as is the pipe clamp described in the Hoke patent in suit. The dictionary meaning of clamp includes in its terms the Lindsay sliding finger clamp and the prior art pipe

clamps. The testimony of experts on both sides is to the effect that if one were going to tighten a band around a pipe, the obvious thing to do would be to get a clamp to pull it together. Plaintiff keeps in its engineering offices a file of catalogs including clamp catalogs. The Lindsay sales literature makes an appeal to engineers to buy the sliding finger clamp as "a general purpose clamp useful to engineering welders, joiners and others." Dunmire, prior to 1955, ordered for plaintiff's engineering file the Lindsay catalog on clamps because they applied to the pipe clamp devices plaintiff was manufacturing. When in 1953 Telford Smith saw the Lindsay sliding finger clamp advertised for clamping the flanges on pipe, it was obvious to him to turn the clamp around to where it was clamping the flanges on a band around the same piece of pipe.

41. The substantial identity between the structure described in the claims in suit and the structure of the Lindsay prior art sliding finger clamp would amount to defendant's recapturing the Lindsay device from the public domain if these broad claims were to be left standing.

## CONCLUSIONS OF LAW

1. That this Court has jurisdiction of the subject matter and of the plaintiff and the defendant.

2. That the defendant is owner of all of the right, title and interest in and to patent 2,897,568 in suit, including the right of action for past infringement thereof.

3. That failure of the Patent Office Examiner to cite the Lindsay prior art patent rebuts any presumption of validity attaching to the grant of the patent.

4. That the Lindsay prior art sliding finger clamp patent is in the clamp art as is the Hoke patent in suit.

5. That claims 1 to 8 of Patent 2,897,568 in suit are invalid for lack of invention. The principles so clearly enunciated in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162, apply here, and defendant has failed to distinguish its case so as to avoid the rules laid down therein.

6. Hoke did not exercise that degree of inventive skill necessary to comply with the requirements of § 103 of Title 35 U.S.C., which relates to conditions for patentability and to justify this court in holding the claims in issue valid.

7. That, additionally, the claims of the Hoke patent in suit are invalid under § 102(b) of Title 35 U.S.C., because they are anticipated by the split sleeve clamp sold by plaintiff to Dominguez over a year before the Hoke application was filed.

8. That, additionally, the claims of the Hoke patent in suit are invalid under the Supreme Court rule in Knapp v. Morss, 150 U.S. 221, 228, 14 S.Ct. 81, 37 L.Ed. 1059, because these claims would be infringed by the Dominguez device if it were later in time instead of earlier.

9. That the claims of the Hoke patent in suit cannot be infringed by plaintiff's pipe clamp, which device was copied from an identical clamp in the public domain since 1939.

10. That a declaratory judgment be entered holding claims 1 to 8 in suit invalid and dismissing defendant's counterclaim for infringement.

11. That the matter of whether plaintiff is entitled under 35 U.S.C. § 285 to an award of attorney's fees may be presented and considered separately at the time of settling costs, or subsequent to a decision by the court.

12. That said judgment provide that the plaintiff recover its taxable costs from the defendant and have judgment therefor.